# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 17-481V
Filed: April 24, 2019
PUBLISHED

| | |
|---|---|
| JOANNE GURNEY,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Special Processing Unit (SPU);<br>Ruling on Entitlement; Table Injury;<br>Influenza (Flu) Vaccine; Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA);<br>Reconsideration |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for petitioner.
*Julia Marter Collison*, U.S. Department of Justice, Washington, DC, for respondent.

### ORDER DENYING MOTION FOR RECONSIDERATION[1]

**Dorsey**, Chief Special Master:

On April 4, 2017, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") following receipt of her October 1, 2015 influenza ("flu") vaccination. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. After respondent failed to respond to petitioner's motion for a ruling on the record, the undersigned found that petitioner is entitled to compensation for a SIRVA. Respondent now moves for reconsideration.

---

[1] The undersigned intends to post this ruling on the United States Court of Federal Claims' website. **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished ruling contains a reasoned explanation for the action in this case, undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

## I.     Procedural History

The full procedural history is included in the undersigned's March 19, 2019 Ruling on Entitlement. (ECF No. 61.)  Most pertinent to this motion is the history following the fact hearing held in this case on March 29, 2018.

The undersigned held a post-hearing status conference on April 3, 2018. (ECF No. 38.)  At that time the undersigned indicated that "she finds petitioner to be a credible witness and that her testimony is credible and reasonable regarding her delay in seeking treatment of her shoulder injury.  Although the delay in seeking treatment could be a factor in assessing petitioner's damages, it does not defeat petitioner's claim." (*Id*. at 1)  Nonetheless, the undersigned indicated that expert opinion would be necessary to address the significance, if any, of potential aggravating incidents discussed in petitioner's testimony as well as symptoms of numbness, tingling, and neck pain described in petitioner's testimony.[3] (*Id*.)  The undersigned further indicated that she "would like to see an orthopedic expert opinion regarding whether petitioner's symptoms could be attributed solely to her vaccination, solely to her traumas, or to a combination of the two.  The expert should also opine on the significance of petitioner's description of numbness, tingling, and neck pain." (*Id*. at 2.)

Petitioner filed updated medical records as Exhibit 26 on May 21, 2018.  (ECF No. 41.)  She filed an expert report by Marco Bodor, M.D., on May 24, 2018, as Exhibit 27, with supporting literature marked as "Tabs" A to D.  Dr. Bodor's curriculum vitae was filed as Exhibit 28.  (ECF No. 43.)

Of note, Dr. Bodor's listed publications includes "Vaccination related shoulder dysfunction," a paper appearing in the January 8, 2007 volume of *Vaccine*.  Respondent cited this research when proposing to add SIRVA to the Vaccine Injury Table.  80 Fed. Reg. 45132, Notice of Proposed Rulemaking, July 29, 2015.  Dr. Bodor is a doctor of physical medicine and rehabilitation.  (Ex. 28, p. 1.)  He is licensed to practice medicine in California and is board certified in physical medicine and rehabilitation, with subspecialties in pain management and sports medicine.  He is also board certified in neuromuscular and electrodiagnostic medicine.  (Ex. 28, p. 1.)  Dr. Bodor earned his medical degree at the University of Cincinnati Medical School in 1987 and subsequently completed an internship in surgery at the University of California, San Diego, and a residency in physical medicine and rehabilitation at the University of Michigan.  (*Id*.)  He previously held positions as an emergency physician and attending physiatrist from 1988 through 1994.  Since 1995, he has practiced as an interventional physiatrist in private practice.  (Ex. 28, p. 1.)  Additionally, Dr. Bodor is an assistant professor in the Department of Neurological Surgery at the University of California, San Francisco, Medical Center and team physician for the Napa Valley College Athletic department.  (*Id*.)

---

[3] Petitioner did not actually reference numbness.  She described some tingling in her fingers and a "strange sensation" that she compared to the squeezing of an elastic band above the elbow. (Tr. 69.)

2

On August 29, 2018, respondent filed a responsive expert report by Robert Brophy, M.D., as Exhibit A, with supporting materials filed as "Tabs" 1 and 2. Dr. Brophy's curriculum vitae was filed as Exhibit B. (ECF No. 49.)

Dr. Brophy is a professor of sports medicine in the Department of Orthopaedic Surgery at the Washington University School of Medicine in St. Louis, Missouri. (Ex. B, p. 1.) He has been teaching at the Washington University School of Medicine since 2007. (*Id*.) He is licensed to practice medicine in the state of Missouri and is a diplomate of the American Board of Orthopedic Surgery with a Certificate of Added Qualifications in sports medicine. (*Id*.) Dr. Brophy earned his medical degree at the Washington University School of Medicine in 2001. (Ex. B, p. 1.) Subsequently, he completed an internship in orthopedic surgery and general surgery at New York Presbyterian Hospital in New York City, following by a residency in orthopedic surgery and a fellowship in sports medicine and shoulder surgery at the Hospital for Special Surgery in New York, New York. (*Id*.) Dr. Brophy lists a multitude of peer reviewed publications on his curriculum vitae. (Ex. B, pp. 6-29.) Like Dr. Bodor, a number of these publications are related to shoulder conditions.

Petitioner filed a supplemental expert report by Dr. Bodor on October 24, 2018, as Exhibit 29. (ECF No. 52.) Supporting medical literature was filed as Exhibits 30 to 45. (ECF Nos. 52-53.)

Thereafter, respondent requested an opportunity to file a further response to petitioner's supplemental expert report and requested a hearing. (ECF No. 56.) The undersigned allowed respondent the opportunity to file the requested response, but declined to proceed with a hearing, indicating that "[a]t this time the undersigned does not believe that a further hearing will be necessary to resolve entitlement in this case."[4] (ECF No. 57.)

Respondent filed a supplemental expert report by Dr. Brophy on December 19, 2018. (ECF No. 58.) Petitioner filed a motion for a ruling on the record on February 27, 2019. (ECF No. 60.) Respondent's response was due by March 13, 2019, but respondent filed no response.

On March 19, 2019, the undersigned issued a Ruling on Entitlement finding petitioner entitled to compensation for a Table Injury SIRVA. (ECF No. 61.) On March 29, 2019, respondent filed a motion for reconsideration pursuant to Vaccine Rule 10(e). (ECF No. 63.)

Vaccine Rule 10(e)(2) indicates that the special master may seek a response to a motion for reconsideration from the nonmoving party. In this case, respondent

---

[4] The Vaccine Act provides that the special master "may conduct such hearings as may be reasonable and necessary. §12(d)(3)(B)(v). Pursuant to the Vaccine Rules, "[t]he special master may decide a case on the basis of written submissions without conducting an evidentiary hearing." Vaccine Rule 8(d). The special master determines the format for taking evidence "based on the specific circumstances of each case." Vaccine Rule 8(a).

indicated in his motion that petitioner intended to oppose his motion and the undersigned allowed petitioner 14 days to file a response. (ECF No. 64.) Petitioner filed her response on April 12, 2019. (ECF No. 65.) Accordingly, respondent's motion is ripe for adjudication.

### II. Legal Standard

Vaccine Rule 10(e) governs motions for reconsideration of a special master's decision. It provides that "[e]ither party may file a motion for reconsideration of the special master's decision within 21 days after the issuance of the decision ...." Vaccine Rule 10(e)(1). Special masters have the discretion to grant a motion for reconsideration if to do so would be in the "interest of justice." Vaccine Rule 10(e)(3). As noted by another special master, "there is a dearth of law interpreting Vaccine Rule 10(e)(3)," beyond the conclusion that (as the rule itself makes clear) it is within the special master's discretion to decide what the "interest of justice" is in a given case. *Krakow v. Sec'y Health & Human Servs., No. 03-632V,* 2010 WL 5572074, at *3 (Fed. Cl. Spec. Mstr. Nov. 12, 2010) (granting reconsideration of decision dismissing case for failure to prosecute). Many decisions assume that the standard for reconsideration is congruent with the "manifest injustice" standard utilized under Rule 59(a) of the Rules of the Court of Federal Claims, which has been defined to be unfairness that is "clearly apparent or obvious." *Amnex, Inc. v. United States,* 52 Fed. Cl. 555, 557 (2002); *see also Krakow*, 2010 WL 5572074, at *3–5 (citations omitted). A motion for reconsideration "is not intended to give an unhappy litigant an additional chance to sway the court.'" *Prati v. United States*, 82 Fed. Cl. 373, 376 (2008) (quoting *Fru-Con Constr. Corp. v. United State*s, 44 Fed. Cl. 298, 300 (1999)). "Manifest" means "clearly apparent or obvious." *Ammex, Inc. v. United States*, 52 Fed. Cl. 555, 557 (2002). The moving party "must show: (1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice." *Matthews v. United States*, 73 Fed. Cl. 524, 526 (2006) (citing *Griswold v. United States*, 61 Fed. Cl. 458, 460-61 (2004)).

In prior cases, special masters have noted that Vaccine Rule 10(e) applies only to final decisions and is not available as a means to reopen entitlement. However, it has also been observed that special masters have discretion in revisiting entitlement decisions. *See, e.g. Hanlon v. Sec'y Health & Human Servs.*, 40 Fed. Cl. 625, 629 (Fed. Cl. 1998)(stating that "[w]hether or not to reconsider, prior to issuance of a final decision, an announced finding of entitlement in a vaccine case is left to the discretion of the special master.")

### III. Discussion

In this case, respondent raises three primary points. First, respondent argues that reconsideration is warranted in the interest of justice because the undersigned's ruling did not account for respondent's response. Second, respondent argues reconsideration is warranted because the undersigned erred in her legal analysis regarding respondent's position concerning idiopathic adhesive capsulitis. And third, although not explicitly raised as a basis for reconsideration, respondent disputes the

undersigned's weighing of the evidence in this case, including the undersigned's finding of fact that onset of petitioner's injury was within 48 hours of vaccination. Petitioner disputes that any of the points raised by respondent provide a basis for reconsideration and further argues that respondent's belated response to her motion for a ruling on the record should not be considered.

### A. Respondent's Failure to Respond

Respondent first argues that her motion should be granted in the interest of justice due to his counsel's error in calendaring the deadline for filing his opposition to petitioner's motion for a ruling on the record. The undersigned is not persuaded.

Vaccine Rule 20(b)(1) states that "[u]nless otherwise provided in these rules or by order of the special master or the court, a response or objection to a written motion must be filed within 14 days after service of the motion." Moreover, respondent's counsel acknowledges that "[p]etitioner filed her motion for [a] ruling on the record on February 27, 2019. An automatic responsive deadline was generated for March 13, 2019, and appears on the docket in the same entry as the motion." (ECF No. 63, p. 2 (internal citations omitted).)

However, respondent indicates that "at the time that petitioner sought a thirty-day extension, respondent's counsel had calendared her response as being due thirty days later, on March 27, 2019, consistent with her personal experience in the Vaccine Program for briefing cases that would be decided on the record without a hearing." (ECF No. 63, p. 2.) Contrary to respondent's counsel's expectation, the automatic responsive deadline referenced by respondent's counsel is generated by CM/ECF precisely because it reflects the response period dictated by the Vaccine Rules.

Respondent's counsel further noted that "[g]iven the substantive nature of a Motion for a Ruling on the Record, it is counsel's experience that the court has allowed more than the two weeks that is typically afforded to a party when a motion is filed in the Vaccine Program." (ECF No. 63, p. 2, n. 3.) The undersigned notes, however, that such accommodations are by order of the special master or the court pursuant to either Vaccine Rule 20(b)(1) or 19(b). Absent such an order, Vaccine Rule 20(b)(1) requires a response to be filed within 14 days of service of a motion. Moreover, as counsel acknowledges, she was notified of the deadline at the time petitioner filed her motion for a ruling on the record.

Respondent's counsel's failure to properly calendar her deadline in accordance with the Vaccine Rules constitutes mere negligence or law office failure and does not warrant relief "in the interest of justice." *Accord Epps v. Sec'y Health & Human Servs.*, No. 02-1976V, 2011 WL 4711911, at *4-5 (Fed. Cl. Spec. Mstr. Aug. 3, 2011)(finding that failure to timely file a motion for reconsideration does not constitute the type or extraordinary circumstance that justifies relief in the interest of justice and further noting that "[a]dherence to the time limits prescribed in the Vaccine Rules ensures a measure of uniform treatment and fairness for all litigants."). Where such negligence has been

5

excused in the interest of justice, reconsideration has been granted in part based on the Vaccine Act's "bias toward compensation," a factor which would not be served by reconsideration in this case. *Shaw v. Sec'y Health & Human Servs.*, 91 Fed. Cl. 715, 721 (2010); *see also Krakow*, 2010 WL 5572074.

### B. Consideration of Idiopathic Adhesive Capsulitis

Respondent also argues that reconsideration is in the interest of justice because the undersigned was legally mistaken in finding petitioner's adhesive capsulitis compatible with SIRVA for purposes of meeting petitioner's *prima facie* burden of proof. Respondent contends that "adhesive capsulitis is functionally different from SIRVA" and that "Petitioner has not show[n] by preponderant evidence that adhesive capsulitis is a sequela of SIRVA." (ECF No. 63, pp. 6-7.) Placing these contentions in the context of the QAI definition of SIRVA, respondent argues that idiopathic adhesive capsulitis constitutes a "condition or abnormality . . . that would explain the patient's symptoms" pursuant to the Qualifications and Aids to Interpretation (QAI) that govern Table SIRVA claims, thereby defeating any Table injury claim. (ECF No. 63, p. 6 (quoting 42 C.F.R. § 100.3(c)(10).) The undersigned disagrees.

Importantly, respondent's motion misinterprets the undersigned's Ruling on Entitlement in a significant respect. Respondent contends that the undersigned "presumed" adhesive capsulitis to be compatible with SIRVA. (ECF No. 63, p. 5.) This is not accurate. Rather, the undersigned found that, in light of the record as a whole, petitioner had met her burden of establishing the presence of a Table SIRVA by demonstrating each of the QAI criterion for SIRVA by preponderant evidence. Under these criteria, petitioner must establish: (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; (ii) Pain occurs within the specified time-frame; (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy). 42 C.F.R. § 100.3(c)(10)

Specifically, citing to respondent's own rulemaking, the undersigned held in her Ruling on Entitlement as follows:

> [T]o establish a Table SIRVA, petitioner does not bear any burden to affirmatively prove that her adhesive capsulitis was caused by her vaccine. Her burden is to prove the elements of SIRVA as set forth in the QAI along with satisfying the timing requirements of the Vaccine Injury Table. Nothing in the QAI for SIRVA requires the presence of any specific orthopedic diagnosis and adhesive capsulitis is compatible with SIRVA. Significant in that regard, when proposing to add SIRVA to the Vaccine Injury Table, respondent specifically identified adhesive capsulitis or frozen shoulder

syndrome as "diagnoses, beyond deltoid bursitis, that resulted in shoulder pain following vaccination." National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, 80 Fed. Reg. 45132, Notice of Proposed Rulemaking, July 29, 2015.

(ECF No. 61, p. 9 (quoting "Proposed Rulemaking").)

Notwithstanding respondent's argument that "adhesive capsulitis is functionally different from SIRVA," it is important to note that the QAI definition of SIRVA was drafted to encompass adhesive capsulitis cases. That is, as the undersigned noted in the Ruling on Entitlement, adhesive capsulitis is "compatible" with SIRVA. In light of respondent's arguments on reconsideration, the proposed rulemaking cited in the undersigned's Ruling on Entitlement is worth quoting at length. Respondent's proposed rulemaking stated in relevant part:

> The IOM reviewed the scientific and medical literature finding evidence that convincingly supports a causal relationship between vaccine injection (with a needle) into an arm and deltoid bursitis. The report noted that the published VICP case series (Atanasoff et al.), as described, were clinically consistent with deltoid bursitis. The VICP case series found that 93 percent of patients had the onset of shoulder pain within 24 hours of vaccine administration and 54 percent had immediate pain following vaccine injection. **The VICP case series found several diagnoses, beyond deltoid bursitis, that resulted in shoulder pain following vaccination, including tendonitis, impingement syndrome, frozen shoulder syndrome, and adhesive capsulitis.** Another case series reported two cases of shoulder pain, weakness and reduced range of motion following vaccination with onset of symptoms within 48 hours of vaccination. [Bodor M, Montalvo E, Vaccination related shoulder dysfunction, Vaccine 25(2007) 585-587.] **In order to capture the broader array of potential injuries, the Secretary proposes to add SIRVA for [certain influenza][5] vaccines that are administered intramuscularly through percutaneous injection into the upper arm.**

Proposed Rulemaking, 2015 WL 4538923, at *45136 (emphasis added).

Indeed, in the undersigned's experience, adhesive capsulitis is a common sequela of SIRVA. It has been seen in numerous SIRVA cases resolved in this program and has not been considered an impediment to compensation.[6] In fact,

---

[5] The quoted language is included in a section relating to tetanus toxoid-containing vaccinations, but later sections relating to different vaccinations, including intramuscularly-administered seasonal influenza vaccines, cite back to this language for support of inclusion of SIRVA on the table for each type of vaccine.

[6] For just a few examples: *See, e.g. Komaki v. Sec'y Health and Human Servs.*, No. 16-1379V, 2017 WL 4325292 (Fed. Cl. Spec. Mstr. Mar. 13, 2017 (finding entitlement where respondent concluded that petitioner's alleged SIRVA was consistent with vaccine-caused adhesive capsulitis); *Dix. v. Sec'y Health*

respondent has explicitly conceded prior adhesive capsulitis cases as fitting within the Table definition of SIRVA.[7]  *See, e.g. Gillespie v. Sec'y Health & Human Servs.*, No. 17-597V, 2018 WL 1835546 (Fed. Cl. Spec. Mstr. Jan. 19, 2018)(noting that "[o]n January 19, 2018, respondent filed his Rule 4(c) report in which he concedes that petitioner is entitled to compensation in this case. Specifically, respondent believes that petitioner's alleged injury identified as right shoulder adhesive capsulitis, bursitis, and tendinitis is consistent with a shoulder injury related to vaccine administration ('SIRVA'), as defined by the Vaccine Injury Table." (internal citations omitted)).

Moreover, the conclusion that adhesive capsulitis is a recognized sequela of SIRVA is supported, not only by respondent's own above-cited rulemaking, but also by medical literature filed in this case.  *See, e.g.* Ex. 27, Tab C (Bodor and Montalvo, "Vaccination-related shoulder dysfunction") and Ex. 31 (Degreef, I., "Post-vaccination Frozen Shoulder Syndrome. Report of 3 Cases").  Most notably, petitioner filed "Shoulder Injury Related to Vaccine Administration (SIRVA)" by S. Atanasoff, *et al*, in support of Dr. Bodor's opinion.  Ex. 27, Tab D.  Respondent cited this specific study as the basis for creating the SIRVA criteria as a means of including injuries beyond deltoid bursitis on the Vaccine Injury Table.  *See* Proposed Rulemaking, 2015 WL 4538923, at *45136.  That study suggests that, among the study population, several conditions, specifically including adhesive capsulitis, "may cause no symptoms until provoked by trauma or other events" and in that regard "may have been present prior to vaccination and became symptomatic as a result of vaccination-associated synovial inflammation." Ex. 27, Tab D, p. 4.

Respondent stresses the uncontroversial point that "[t]he hallmark sign of an adhesive capsulitis is the inability to move one's shoulder – either on one's own or with the help of someone else." (ECF No. 67, p. 7.)  Yet, this leads respondent to the *incorrect* conclusion that "[s]ince onset is not acute, a diagnosis of adhesive capsulitis is not consistent with the QAI's definition of SIRVA, which requires 48-hour onset." (*Id*. (citing 42 C.F.R. § 100.3(c)(10).)  Contrary to respondent's position in this case, the QAI for SIRVA explicitly requires only that the onset of shoulder pain, not restricted range of motion, occur within 48 hours.  *See* 42 C.F.R. § 100.3(c)(10)(ii).  Pursuant to the QAI, a vaccine recipient shall be considered to have suffered a SIRVA if all four of the listed criteria are satisfied.  The second SIRVA criterion indicates that for an injury to be considered a SIRVA "[p]ain occurs within the specified time-frame." *Id*.  The third

---

*& Human Servs.*, No. 16-1574V, 2017 WL 6383294 (Fed. Cl. Spec. Mstr. May 17, 2017)(same); *Haley v. Sec'y Health & Human Servs.*, No. 14-1041V, 2015 WL 777287 (Fed. Cl. Spec. Mstr. Feb. 2, 2015 (finding entitlement where petitioner alleged vaccine-caused adhesive capsulitis and respondent concluded the injury to be consistent with SIRVA); *Tamang v. Sec'y Health & Human Servs.*, No. 15-802V, 2015 WL 10739332 (Fed. Cl. Spec. Mstr. Dec. 10, 2015)(finding entitlement to compensation for adhesive capsulitis); *Thompson v. Sec'y Health & Human Servs.*, No. 14-963V, 2015 WL 1275445 (Fed. Cl. Spec. Mstr. Feb. 23, 2015)(finding entitlement where petitioner alleged vaccine-caused adhesive capsulitis and respondent concluded the injury to be consistent with SIRVA.).  In her response to respondent's motion, petitioner additionally cites further examples. (*See* ECF No. 65 at n.5.)

[7] Respondent is not bound by positions taken in prior cases.  Nor does the undersigned find respondent's prior concessions dispositive of the outcome in this case.

criterion, the only criterion that addresses reduced range of motion, requires that pain and reduced range of motion are limited to the shoulder at issue, but does not require onset within any specified timeframe. 42 C.F.R. § 100.3(c)(10)(iii).

Thus, for all of the above reasons, a diagnosis of adhesive capsulitis may be consistent or "compatible" with SIRVA and it cannot be said as a general matter that an adhesive capsulitis diagnosis by definition excludes the presence of a Table SIRVA. Therefore, if the facts of petitioner's claim otherwise meet the plain language of the QAI criteria for SIRVA, petitioner should bear no burden to affirmatively establish a causal link between her vaccination and her adhesive capsulitis.

Turning then to the specifics of this case, respondent argues that "[u]nder the facts of this particular case, the evidence suggests no link between the petitioner's adhesive capsulitis and her flu vaccination."[8] (ECF No. 63, p. 10.) Respondent further suggests that "[t]he fact that respondent has previously identified adhesive capsulitis in case reports of shoulder pain following vaccination does not mean that respondent concedes these diagnoses are caused by vaccination; they may very well be concurrent to a SIRVA injury, or idiopathic in nature." (*Id*. at 8.) Thus, respondent argues that in this case idiopathic adhesive capsulitis constitutes a "condition or abnormality . . . that would explain the patient's symptoms" pursuant to the QAI. (ECF No. 63, p. 6 (quoting 42 C.F.R. § 100.3(c)(10).)

However, respondent's argument that petitioner's adhesive capsulitis constitutes a "condition or abnormality . . . that would explain the patient's symptoms" under the facts of this specific case was unpersuasive. Specifically, respondent argues that "the onset of petitioner's pain is most consistent with an idiopathic adhesive capsulitis that was in the freezing stage at the time of her vaccination." (ECF No. 63, p. 10.) Respondent's expert, Dr. Brophy, opined that the "freezing stage" is a gradual process lasting for between three to nine months. (Ex. A, p. 3.) Yet Dr. Brophy also acknowledged that petitioner's shoulder was not examined, and her adhesive capsulitis not diagnosed, until at least six months after her vaccination. He observed that petitioner "noted a history of left shoulder pain with progressive loss of motion over a 6 month period leading up to her evaluation in March of 2016." (*Id*.) There is no evidence in the record to indicate that petitioner was symptomatic prior to her vaccination. Therefore, notwithstanding that respondent stresses adhesive capsulitis to have a gradual onset, by Dr. Brophy's own measure, the timing and course of petitioner's adhesive capsulitis remains consistent with a post-vaccination sequela to her SIRVA as

---

[8] This specific statement reverses petitioner's burden of proof. Petitioner need not affirmatively link her adhesive capsulitis to her vaccination. Rather, under the QAI, petitioner must, if anything, rule-out her adhesive capsulitis as a separate condition unrelated to vaccination that would explain her symptoms. For all the reasons described herein, the undersigned's Ruling on Entitlement concluded that, more likely than not, no other condition or abnormality, including her adhesive capsulitis, independently explained petitioner's symptoms.

described in the above-cited literature and as envisioned by the rulemaking which created "SIRVA" as a Table Injury.[9]

Additionally, the undersigned notes that although Dr. Brophy challenged the evidence associating adhesive capsulitis with SIRVAs, he did not at any point suggest that idiopathic adhesive capsulitis – which he referred to as "garden variety adhesive capsulitis" – is in any way distinct from adhesive capsulitis stemming from a known cause such an injurious vaccine injection. He noted only that "I agree that adhesive capsulitis CAN be secondary to other causes. This does not alter the fact that the vast majority of adhesive capsulitis cases ARE idiopathic." (Ex. C, p. 2 (emphasis original).) He makes no argument that idiopathic adhesive capsulitis itself represents a separate and distinct condition from the adhesive capsulitis referenced in the above-cited medical literature and the Secretary's own rulemaking.

Thus, in light of the above and upon consideration of the record as a whole, the undersigned found that petitioner met her burden of establishing that no other condition or abnormality was present that would explain her condition. In that regard, petitioner's claim was supported by medical records, medical literature, and by persuasive expert opinion. Additionally, the undersigned found that petitioner had no history of pain, inflammation or dysfunction of her affected shoulder that would explain her symptoms, that petitioner's shoulder pain occurred within the specified time-frame, and that her pain and reduced range of motion were limited to the shoulder in which she received her intramuscular vaccine. These findings support the conclusion that petitioner suffered a Table SIRVA, entitling petitioner to a presumption that her injury – regardless of specific orthopedic diagnosis – was vaccine-caused.

As the undersigned noted in her ruling on entitlement, petitioner need not prove that her adhesive capsulitis was caused by her vaccination. A SIRVA "manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm" and "is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.)." 42 C.F.R. § 100.3(c)(10). For all the reasons discussed above, petitioner's injury meets the table definition of SIRVA under any plain reading of the QAI. Respondent's arguments to the contrary are unpersuasive as applied to the facts of this case.

### C. Remaining Arguments

Because respondent also incorporated into his motion his response to petitioner's underlying motion for a ruling on the record, respondent includes several

---

[9] As noted above, respondent has stressed the argument that petitioner's adhesive capsulitis constitutes "a condition or abnormality . . . that would explain the patient's symptoms" under the fourth QAI SIRVA criterion. However, the undersigned also notes that, to the extent respondent would argue petitioner's adhesive capsulitis constitutes a "history of pain, inflammation or dysfunction of the affected shoulder" under the first QAI SIRVA criterion, such an argument would also fail for the same reasons given the facts of this case, namely that petitioner's medical records contain no evidence of prior pain, inflammation or dysfunction and Dr. Brophy's description of the timing of onset in this case remains consistent with adhesive capsulitis as a post-vaccination sequela.

arguments going to the undersigned's weighing of the evidence. The undersigned has reviewed these arguments, including respondent's contention that the undersigned's fact-finding as to onset is incorrect, but concludes that these arguments do not support a motion for reconsideration. A motion for reconsideration "must be based 'upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court.'" *Prati,* 82 Fed. Cl. at 376 (quoting *Fru–Con Constr. Corp.,* 44 Fed. Cl. at 300). Nonetheless, the undersigned notes that, for all the reasons discussed above and in the Ruling on Entitlement, she would not find these arguments persuasive if considered.

## IV. Conclusion

**For all the foregoing reasons, respondent's motion is DENIED.**

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Chief Special Master